UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ROBIN BLACK**, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:21-cv-03745 |
| v. | Honorable Thomas M. Durkin<br>Magistrate Judge Shiela M. Finnegan |
| **FIRST IMPRESSION INTERACTIVE, INC.; JEFFREY GILES; and DALE BROWN**, | |
| Defendant. | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY AND SET A BRIEFING SCHEDULE FOR SUMMARY JUDGMENT

Proposed class action counsel, on behalf of proposed class representative Robin Black ("Black"), sued Defendants First Impression Interactive, Inc. ("First Impression"), and its officers Jeffrey Giles and Dale Brown, claiming that receipt of six (6) voicemail message over a two-month period violates the Telephone Consumer Protection Act ("TCPA"). (*See* Complaint ("Complaint"), Docket Entry ("DE") #1 at ¶¶ 45-46 (identifying six calls sent in February and March, 2021).) What Black's counsel fails to detail in the Complaint is that Ms. Black repeatedly and intentionally signed up for and sought out educational information from First Impression. Specifically, on at least three occasions, Black filled out detailed information about herself on First Impression's website, including identifying her areas of educational interest. *See* Declaration of Jeffrey Giles ("Giles Dec."), attached hereto as Exhibit A, at ¶¶ 6-11. The website forms included specific language consenting to be contacted about educational opportunities. *Id*. at ¶¶ 7-8. In response to Black's submissions, First Impression sent her information limited to educational

opportunities in her area of interest. *Id*. at ¶ 12. Ms. Black did not respond to those communications or otherwise ask for further communications to stop. *Id*. at ¶ 12.

Under the rulings of the FCC and in this Circuit, Black's submissions provided the necessary consent for First Impressions to communicate with her on educational opportunities. That consent included the permission for artificial or prerecorded messages. Not surprisingly, the existence of consent to receive messages defeats both Black's claim and her request to act as a class representative for others who supposedly have not consented to receiving messages.

Compounding this issue of consent, Black has sued an admittedly dissolved company. She has also tried to plead in the officers of that company personally. But the conclusory allegations asserted by Black as to individual liability for Messrs. Brown and Giles are insufficient to state a claim, even under the theory advocated in the Complaint, which is not available in this Circuit and has been criticized in others. Moreover, this court lacks personal jurisdiction over Mr. Giles.

At this early stage in the case, this dispositive issue of consent can and should be resolved before significant resources are expended on this case. That resolution can happen in at least two ways. First, because of the formulaic and conclusory way that Plaintiff pled the issues of consent and harm in its Complaint, the claims can be dismissed as failing to establish standing under Article III of the Constitution. Second, if the Court believes that factual issues prevent dismissal, then the narrow issue of consent can be addressed in an immediate motion for partial summary judgment. In the event the Court would like to proceed in this route, Defendants request a stay of the proceedings and a briefing schedule for partial summary judgment on the consent issue. Either way, judicial economy and fairness warrant an early resolution on this issue.

**I.      ARGUMENT**

     **A.      Plaintiff Has Failed to Plead Facts Plausibly Demonstrating a Claim Against Messrs. Giles and Brown Individually**

Initially, the individual claims asserted against Messrs. Brown and Giles should be dismissed from this case because they (1) are based on claims of secondary liability under the TCPA that are not available in this Circuit, and (2) fail to plead sufficient facts showing such liability is appropriate in this case. At the pleading stage, "a compliant must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555. Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

Plaintiff asserts two causes of action, both under the TCPA. The First Cause of Action asserts a claim under 47 U.S.C. § 227(b),[1] claiming that Defendants "placed, or had placed on their behalf, prerecorded and autodialed telemarketing telephone calls to Plaintiff's … cellular telephone numbers without prior express written consent." (Complaint, ¶¶ 74-78.) The Second Cause of Action refers to 47 U.S.C. § 227(c), and claims Plaintiff received "more than one telephone call within any 12-month period by or on behalf of the same entity…." (Complaint, ¶¶ 79-84.)

The TCPA creates liability for "***any person*** within the United States … *[who] make[s] any*

---

[1] From Plaintiff's pleadings, it appears it is trying to assert a claim under 47 U.S.C. § 227(b)(1)(A)(iii).

*call* (other than a call made … with the prior express consent of the called party) using … an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service" may be found liable. 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added); *see also* 47 U.S.C § 227(c)(5) (creating a private right to action for a "person who has received more than one telephone call within any 12-month period ***by or on behalf of the same entity***…."). Thus, by its plain terms, the TCPA applies to the person who makes the call being complained about. It does not include language creating personal liability for officers or directors of companies alleged to have violated the TCPA.

Here, the only party alleged to have "made" any calls is First Impression. (Complaint, ¶¶ 3, 18, 31.) While Black pleads some conclusory assertions suggesting that Messrs. Brown and Giles may have "participated in" the process of "making" calls, its allegations also make clear that those assertions relate to their roles as company officers. (*See* Complaint, ¶¶ 17, 20.) Thus, instead of pleading direct personal liability, Black appears to be asserting a form of secondary liability for company officers, called "personal participation liability." *See City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 159–60 (3d Cir. 2018) (discussing the theory).[2] This theory disregards the general rule that "[i]ndividuals ordinarily are shielded from personal liability when they do business in a corporate form, and ... it should not lightly be inferred that Congress intended to disregard this shield." *Id.*, citing *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1313 (11th Cir. 2013) (discussing direct liability of corporate officers under the Fair Labor Standards Act). The theory is also either not available or should not be available in this Circuit.

The Seventh Circuit addressed the question of secondary liability for Federal statutory

---

[2] Plaintiff blends allegations of "personal participation" and vicarious liability. But the principles rejecting "secondary liability" apply to both sets of allegations.

violations in *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685 (7th Cir. 2008) (*en banc*). In *Boim*, the plaintiff sued a group of organizations who allegedly provided financial support to terrorist organizations, claiming they violated 18 U.S.C. § 2333(a). But "Section 2333 does not say that someone who assists in an act of terrorism is liable; that is, it does not mention 'secondary' liability …." *Boim*, 549 F.3d at 689. Relying on the Supreme Court's decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), the *en banc* Circuit held that "statutory silence on the subject of secondary liability means there is none…." *Id*. In other words, because the statute's language applies only to the entities that commit "an act of international terrorism," the Supreme Court's decision in *Central Bank of Denver* forecloses claims against other entities based on traditional secondary-liability theories, even if they are alleged to have aided in the terroristic act. As the *Boim* decision noted, while *Central Bank of Denver* addressed the Security and Exchange Act of 1934, nothing in that holding "turns on particular features of those laws," so that its reasoning applies to other statutes. *Boim*, 549 F.3d at 689.

The Seventh Circuit has not specifically ruled on the applicability of "personal-participation" liability under the TCPA. *See Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 947 (7th Cir. 2020) (noting same). But the holding in *Boim* applies equally here, since the holding in *Central Bank of Denver* applies to all Federal statutes, and "statutory silence on the subject of secondary liability means there is none." *Boim*, 549 F.3d at 689. The reasoning of *Boim* and *Central Bank of Denver* have also been cited with favor by other Circuits as reasons why the "assumption" that "traditional forms of common-law personal liability remain available under federal statutes by default … may no longer be valid." *City Select Auto Sales*, 885 F.3d at 161.

5

Despite the holding in *Boim*, some cases in this District have nevertheless applied the "personal participation" liability theory to TCPA cases. *See, e.g., Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 324 F. Supp. 3d 973, 983 (N.D. Ill. 2018), *aff'd* 950 F.3d 959 (7th Cir. 2020) (citing *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001)). None have, however, done so while considering the application of *Boim*. Defendants submit that the failure of these decisions to consider *Boim* minimizes if not eliminates their persuasive impact.

Whatever their import, the cases from this District demonstrate that personal liability is not automatically applicable under the personal-participation standard, but instead requires "direct, personal participation in or personal[] authoriz[ation] of the conduct found to have violated the statute, and … not merely tangential[] involvement." *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 2019 WL527497, *6 (N.D. Ill. Feb. 11, 2019), *aff'd* 961 F.3d 942 (7th Cir. 2020); *see also id.* (holding "mere knowledge" was insufficient for personal-participation liability, and "'[d]irect participation or authorization' is required."); *Creative Montessori Learning Center v. Ashford Gear, LLC*, 2010 WL 3526691, *3 (N.D. Ill. Sept. 2, 2010) (holding "one signature on a $28.00 check is insufficient to assert a claim against him individually under the TCPA"). Therefore, to state a claim for personal-participation liability, Plaintiff was required to recite facts, not conclusions, about the nature and quality of the participation of Messrs. Giles and Brown in the business. *See Twombly*, 550 U.S. at 555 (holding courts are "not bound to accept as true a legal conclusion couched as a factual allegation.").

Here, Plaintiff has failed to plead facts regarding the alleged "participation" of Messrs. Brown and Giles in the ongoing business of First Impressions to demonstrate it is plausible that they are subject to personal-participation liability. Plaintiff's sole specific assertion in the Complaint is that Messrs. Brown and Giles "owned [and] operated" First Impressions.

6

(Complaint, ¶¶ 20, 25.) But the remainder of Plaintiff's recitations are either factually unsupported, or generic allegations that relate to business ownership. For example, the conclusion that Messrs. Brown and Giles "had direct, personal participation in, and personally authorized" the conduct is a rote recitation of the personal-participation standard without any factual support. (Complaint, ¶¶ 21, 26); *see also Twombly*, 550 U.S. at 555 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff's conclusions that Messrs Brown and Giles "financially benefitted" from the alleged conduct, or that they had the "right and ability to supervise, direct and control" operations are generic allegations about business ownership, neither of which warrant the inference of direct participation in alleged wrongful conduct. (*See* Complaint, ¶¶ 23, 28.) At best, Plaintiff has conclusorily alleged that Messrs. Brown and Giles had the benefits of owners and operators, but those bare allegations "do not permit the court to infer more than the mere possibility of misconduct," and are therefore insufficient to state a claim. *Iqbal*, 556 U.S. at 679; Fed. R. Civ. P. 12(b)(6).

**B.     Plaintiff's Pleadings Fail to Establish Personal Jurisdiction over Mr. Giles**

At the pleading stage, Plaintiff bears the burden of establishing that personal jurisdiction exists. *Advanced Tactical Ordinance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). To determine whether a plaintiff meets this burden, this Court may consider written submissions from both parties. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). When a defendant challenges by declaration a fact alleged in the plaintiff's complaint, the plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). While courts must also resolve all factual disputes in a plaintiff's favor, *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014), if that plaintiff "fails to refute a contained in the defendants' affidavit, that fact is accepted as true." *Mold-A-Rama*

7

*Inc. v. Collector-Concierge-Int'l*, No. 18-CV-08261, 2020 WL 1530749, at *2 (N.D. Ill. Mar. 31, 2020).

This Court may exercise personal jurisdiction over a defendant if "either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston*, 623 F.3d 440, 443 (7th Cir. 2010) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104–05 (1987)). Since the TCPA does not authorize nationwide service of process, *see Mackey v. IDT Energy, Inc.*, No. 18 C 6756, 2020 WL 108431, at *2 (N.D. Ill. Jan. 9, 2020), Illinois law determines the limits of personal jurisdiction, *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citations omitted).

The Illinois long-arm statute permits the exercise of jurisdiction to the extent permitted by the Fourteenth Amendment's Due Process Clause. *Id*. (citing 735 ILL. COMP. STAT. 5/2–209(c)). As a result, "the state statutory and federal constitutional inquiries merge." *Id*. Under the Fourteenth Amendment's Due Process Clause, general jurisdiction exists when defendants' affiliations with the forum state "are so constant and pervasive 'as to render them essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Thus, plaintiffs must show that a defendant maintained "continuous and systematic" general contacts with the forum such that it would be fair to require it to answer any litigation in that forum arising out of any transaction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

In the Complaint, Plaintiff makes two assertions regarding personal jurisdiction over Mr. Giles. (Complaint ¶¶ 8, 9.) First, Plaintiff claims Mr. Giles is "domiciled in Illinois," (Complaint, ¶ 8), which is an attempt to invoke "general jurisdiction" over Mr. Giles. Second, Plaintiff claims

8

Mr. Giles "transacted business and committed tortious acts within this District and Plaintiff's claims arise from those activities." (Complaint, ¶ 9.) The second allegation is an attempt to invoke "specific jurisdiction" over Mr. Giles. Neither allegation is correct nor supported in the Complaint.

First, for Plaintiff's general jurisdiction allegation, Plaintiff's assertion fails because it is factually wrong. Contrary to Plaintiff's assertion, Mr. Giles is not domiciled in Illinois; he lives in California. Giles Dec., ¶ 13. Therefore, this allegation is just wrong.

Second, for Plaintiff's specific jurisdiction allegations, those allegations are factually unsupported. As noted in the previous section, Plaintiff's allegations about Mr. Giles' involvement with the First Impressions business are essentially limited to assertions that he owns the business. *See* Section I.A., *supra*. But ownership of shares in a company is insufficient by itself to create specific personal jurisdiction. See *GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023-24 (7th Cir. 2009); *Northwest 1 Trucking Inc. v. Haro*, 2020 WL 1974379, *9 (N.D. Ill. Apr. 24, 2020).

Plaintiff has failed to plead any specific facts showing that Mr. Giles personally committed any actions in the State of Illinois, let alone any allegations that those unpled actions gave rise to Plaintiff's claims. As such, Plaintiff has failed to establish personal jurisdiction over Mr. Giles. *See* Fed. R. Civ. P. 12(b)(2).

### C. Plaintiff Has Failed to Plead Facts Showing Standing to Sue under Article III of the Constitution.

A plaintiff must first establish its standing under Article III of the Constitution before it can invoke the power of the Federal Courts. *Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S.Ct. 1540, 1547 (2016). To establish Article III standing, "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547 (citing *Lujan v. Defenders*

9

*of Wildlife*, 504 U.S. 555, 560-61 (1992)). The plaintiff has the burden of establishing these elements "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At the pleading stage, the plaintiff must establish standing with "sufficient factual allegations of an injury resulting from the defendants' conduct, accepted as true, to state a claim for relief that is plausible on its face." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 (7th Cir. 2016)(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S.Ct at 1548 (quoting with alteration *Lujan*, 504 U.S. at 560). A plaintiff cannot meet this standard by alleging merely procedural violations. *Spokeo*, 136 S.Ct. 16 1547-48. That is because "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id*., citing *Raines v. Byrd*, 521 U.S. 811, 820, n. 3 (1997). Instead, a "'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S.Ct at 1548. "'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Id*. at 1549. "Although tangible injuries are perhaps easier to recognize, ... intangible injuries can nevertheless be concrete." *Id*. In determining whether an intangible harm constitutes a sufficiently concrete injury, "both history and the judgment of Congress play important roles." *Id*.

Here, plaintiff's complaint is devoid of plausible allegations of a tangible harm because plaintiff's allegations are factually unsupported. (Complaint, ¶¶ 49-50); *Iqbal*, 556 U.S. at 679 (holding the "tenet [that a court] must take all of the factual allegations in the complaint as true … is inapplicable to legal conclusions."). "[B]ecause they are no more than conclusions, [they] are

not entitled to the assumption of truth." *Iqbal*, 556 U.S at 679.  In fact, at least one of Plaintiff's conclusions is not even a conclusory allegation of harm, but instead identifies the name of a common-law cause of action – without any factual recitation regarding the elements of that cause of action.  For example, Plaintiff identifies "invasion of privacy," (Complaint, ¶ 59), which refers to a four-element common-law cause of action.  *See Busse v. Motorola*, 351 Ill.App.3d 67, 71 (2004) (requiring pleadings showing that, *inter alia*, the "intrusion would be highly offensive or objectionable to a reasonable person").  Plaintiff also identifies she suffered "lost time" and "nuisance," but does not provide any factual support for those assertions or explain how they related to the alleged calls she received.  *See Smith v. Aitima Med. Equip., Inc.*, 2016 WL 4618780, *4 (C.D. Cal. July 29, 2016) (holding conclusory allegations of "aggravation" and "nuisance" insufficient to confer standing under the TCPA).   In short, Plaintiff's conclusory allegations are insufficient to establish an "injury in fact" under *Spokeo*.

But even if Plaintiff had adequately pled the existence of an "injury in fact," her initiation of the relationship with First Impression undermines any claim that the alleged injuries can be "fairly trace[d] to the challenged conduct of" that company.  *Spokeo*, 136 S.Ct. at 1547.  As the FCC held, receiving a message "from a party with whom the consumer has an established business relationship … does not adversely affect subscriber privacy interests." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, ¶¶ 32-34 (1992).  Indeed, citing this FCC ruling, the Seventh Circuit held that "persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have been given, absent instructions to the contrary."[3]  *Blow v. Bijora, Inc.*, 855 F.3d 793,

---

[3] Plaintiff's consent demonstrates both that she is not an appropriate class representative because issues of consent are likely to predominate, rendering class certification inappropriate. *See Brodsky v. HumanaDental Ins. Co.*, 2017 WL 3704824, at *10 (N.D. Ill. Aug. 28, 2017) (Blakey,

803 (7th Cir. 2017), citing 7 F.C.C. Rcd. 8769, ¶ 31; *see also In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15395 (2012) (holding consent to receive text messages includes consent to receive a final confirmatory communication even after revocation of consent). In effect, these rulings show that – if Plaintiff "lost time" or was subjected to a "nuisance" regarding the messages she received – those feelings arose from Plaintiff's conduct (her consent), not First Impression's.

While it is true that Plaintiff does not allege in the Complaint that she consented to receive messages from First Impression, when facing a motion to dismiss for lack of subject matter jurisdiction, a "court may look beyond the allegations of the complaint and may consider other submitted evidence." *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 8661 F.Supp.2d 898, 904 (N.D. Ill. 2012). Here, all Plaintiff alleged as to consent was a single conclusory assertion without factual explanation. (Complaint, ¶ 50.) This bare conclusion is not entitled to an assumption of truth. *Iqbal*, 556 U.S at 679. On the other hand, First Impression has provided the declaration of Jeffrey Giles, in which he testifies that:

(1) First Impression's records show that Ms. Black signed up to receive educational information by or on behalf of First Impressions on at least three different occasions;

(2) As part of that sign-up process, Ms. Black consented to be contacted by First Impressions and its affiliated companies;

(3) Ms. Black voluntarily provided her cellular number as part of that sign up process, along with other identifying information; and

(4) Ms. Black never responded to First Impressions stating that she no longer wanted to be contacted by them regarding educational information.

Giles Dec., ¶¶ 4-12. As these statements show, it was Plaintiff who initiated contact with First

---

J.); *accord Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467-74 (6th Cir. 2017), *as corrected on denial of reh'g en banc* (Sept. 1, 2017).

Impressions and who consented to First Impression's later follow-up messages.

Because Plaintiff has failed to plead facts showing an "injury in fact," and because Plaintiff consented to the communication from First Impression demonstrating that any conclusory assertions of harm do not arise from wrongful conduct by that company, Plaintiff has failed to establish standing to sue under Article III of the Constitution, and its complaint should be dismissed. *See* Fed. R. Civ. P. 12(b)(1).

### D. In the Alternative, the Case Should be Stayed and Summary Judgment Briefing Initiated on the Issue of Consent

While Defendants believe the most appropriate outcome of this motion is dismissal of Plaintiff's Complaint, an alternative approach to resolving the issue of consent would be to stay the pending action while the parties brief the issue on summary judgment. A stay pending summary judgment is appropriate where, as here, a threshold issue can be efficiently resolved prior to expensive discovery. *See Todd by Todd v. Merrell Dow Pharmaceuticals, Inc.*, 942 F.2d 1173, 1178 (7th Cir. 1991) ("Limiting discovery to a threshold issue is proper in a case that may be resolved upon summary judgment"); *Landstrom v. Illinois Dept. of Children and Family Services*, 892 F.2d 670, 674 (7th Cir. 1990) (approving a stay in discovery pending a ruling on qualified immunity). Here, the issue of consent is dispositive of Plaintiff's claims. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (exempting calls made with "prior express consent of the called party"); 47 C.F.R. § 64.1200(a)(1)(iii) (same); 47 C.F.R. § 64.1200(a)(2) (exempting calls made with "prior express written consent of the called party"); (*see also* Complaint, ¶¶ 48-49 (citing statute and regulations)). Defendants can file their motion for partial summary judgment on that issue in a reasonably short amount of time after a ruling on this motion, and – because the motion is directed to Plaintiff's consent – it is unlikely to require any discovery for a response. In other words, a narrow summary judgment motion is likely to either dispose of the case or provide substantial

substantive information for the parties regarding their relative positions. Either way, the result is in the best interests of judicial economy.

Focusing on this narrow issue is especially important where, as here, the costs of discovery are disproportionately more than the amount at issue. Plaintiff alleges six total calls caused a violation of the TCPA by Defendants. Even accepting this allegation as true, and even trebling the amount at issue as Plaintiff requests, the total amount at issue is less than $10,000. *See* 47 U.S.C. § 227(b)(3) (allowing $500 in statutory damages "for each such violation" and providing the court may increase that amount "not more than 3 times"). While Defendants disagree that they have violated the TCPA and therefore that any amount of recovery is appropriate here, the small amount at issue strongly suggests that a stay is appropriate here.

WHEREFORE, for the reasons set forth above, Defendants respectfully requests that this Court dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1), dismiss Mr. Giles for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and dismiss both Mr. Giles and Mr. Brown for failure to state a claim against them personally pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, exercise its discretion and stay this case and issue a briefing schedule for Defendants to submit a motion for partial summary judgment on the issue of consent.

Respectfully submitted,

Dated: September 20, 2021

　　　　*/s/ Jacob D. Koering*　　　　
Jacob D. Koering (Illinois Bar No. 06275292)
koering@millercanfield.com
MILLER, CANFIELD, PADDOCK AND STONE, PLC
225 West Washington Street, Suite 2600
Chicago, IL 60606
(312) 460-4200
*Attorneys for Defendants Jeffrey Giles, and Dale Brown*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Defendants' Memorandum in Support of their Motion to Dismiss or, in the Alternative, to Stay and Set a Briefing Schedule for Summary Judgment, was served upon:

>Max S. Morgan
>The Weitz Firm, LLC
>1528 Walnut Street
>4th Floor
>Philadelphia, PA 19102
>Email: max.morgan@theweitzfirm.com
>
>Jeffrey Daniel Blake
>Thomas A. Zimmerman, Jr.
>Zimmerman Law Offices, P.C.
>77 West Washington Street
>Suite 1220
>Chicago, Illinois 60602
>Emails: jeff@attorneyzim.com
>        tom@attorneyzim.com

by the Court's automated e-filing service on the 20th day of September, 2021.

>*/s/Jacob D. Koering*
>Jacob D. Koering

[X]   Under penalties as provided by law pursuant to Ill.Rev.Stat., Ch. 110, Sec. 1-109, I certify that the statements set forth herein are true and correct.

38146695.1/160440.00001