# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ROBIN BLACK, on behalf of herself and all other similarly situated, | |
| Plaintiff, | No. 21 C 3745 |
| v. | Judge Thomas M. Durkin |
| FIRST IMPRESSION INTERACTIVE, INC.; JEFFREY GILES; and DALE BROWN, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Robin Black alleges that Defendants made autodialed, prerecorded telemarketing calls to individuals on the National Do-Not-Call Registry in violation of the Telephone Consumer Protection Act. Defendants have moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 13; R. 24. That motion is denied.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed

factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

**Background**

Defendants Jeffrey Giles and Dale Brown owned and operated defendant First Impression Interactive, Inc. Black alleges that Defendants made autodialed, prerecorded telemarketing calls to her cell phone which is registered on the National Do-Not-Call Registry. Black alleges that she did not give prior written consent to receive these calls.

First Impression was incorporated in 2007 and dissolved in 2021, before this complaint was filed. Black alleges that Giles and Brown were "the only officers and employees of First Impression," and so "had direct, personal participation in, and personally authorized" the phone calls. R. 20 ¶ 20. More specifically, Black alleges that Giles and Brown:

> (a) participated in the selection of the phone numbers that would be called; (b) designed and approved the calling

2

> campaigns; (c) drafted, worked on, and approved the scripting that would be used on the calls; (d) selected, contracted for, and programmed the dialing equipment used to make the calls; (e) selected, contracted for, and programmed the soundboard technology Defendants used to interact with callers during the calls; (f) determined to what entity callers would be connected based on the information obtained during the calls; and (g) entered into contracts with, managed relationships with, and received money from lead buyers who purchased Defendants' services.

*Id.* ¶ 21.

In addition to these allegations that Giles and Brown were directly responsible for the phone calls, Black alleges that Giles and Brown hired "callers" to place the phone calls. *Id.* ¶ 24. Black alleges that Giles and Brown provided these callers with lists of phone numbers, scripts, and equipment. *Id.* ¶ 25. Black alleges that First Impression's phone calls use prerecorded messages, but a live operator chose what prerecorded messages were played and sometimes spoke to the call recipient directly. *See id.* ¶ 31

**Analysis**

I. **Standing**

To demonstrate an injury in fact required to establish standing, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Defendants argue that Black has failed to meet this burden because she "does not provide any factual support" for her allegations that Defendants' phone calls caused her "lost time" and "nuisance," and

fails to "explain how [any such harm] related to the alleged calls she received." R. 23 at 12.

This argument, however, ignores Black's allegation that the phone calls were an "invasion of privacy," and the Seventh Circuit's holding that "unwanted automated text messages" constitute a "concrete harm" sufficient to confirm standing. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020), *cert. denied,* 141 S. Ct. 2552 (2021); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (citing with approval *Gadelhak's* affirmance of unwanted text messages as an actionable example of the "traditionally recognized" harm of "intrusion upon seclusion"). Of course, Black complains about phone calls instead of text messages. But the Court finds this difference immaterial to the "intrusion of seclusion" or "invasion of privacy" for which Black seeks relief. To the extent Defendants question whether Black has plausibly alleged that this harm is "related to the alleged calls," the Court finds the allegation that unwanted phone calls are disruptive to be more than plausible. Thus, Black has established standing here.

## II. Individual Liability

Because First Impression has dissolved, Black's allegations focus on the personal liability of Giles and Brown. Black claims three forms of personal liability: (1) vicarious liability; (2) "relief defendants"; and (3) "personal participation."

### A. Vicarious Liability

Black asserts vicarious liability in her complaint but does not address it in her brief. That is likely because it does not serve to establish liability for Giles and Brown

4

in this case. "Vicarious liability" applies to the "principal," who is then held liable for the actions of the "agent." *See Magnini v. Centegra Health Sys.*, 34 N.E. 3d 1115, 1121 (Ill. App. Ct. 1st Dist. 2015). Corporations cannot act independently of human agents. *See Downtown Disposal Services, Inc. v. City of Chicago*, 979 N.E.2d 50, 54 (Ill. 2012). Rather, a corporation is the principal for its officers and employees and other agents who act on behalf of the corporation. Neither Brown nor Giles can be "vicariously liable" for the actions of First Impression because, by definition, First Impression cannot be an agent for its officers or employees.

B.  **Relief Defendants**

Black also argues that Giles and Brown are proper defendants here because a plaintiff with a claim against "a dissolved corporation" can also maintain claims against "its individual shareholders as codefendants where they were alleged to have received distributions from the corporation before dissolution." R. 28 at 10. There is authority that a plaintiff who obtains a judgment against a defunct corporation can pursue a supplemental proceeding against the shareholders. *See Matos v. Richard A. Nellis, Inc.*, 101 F.3d 1193 (7th Cir. 1996). But other than a single district court case from 1997, which has been questioned by at least one subsequent court, Black has cited no authority that it is proper for shareholders to be defendants on the substantive claims without a separate basis for personal liability. *See* R. 28 at 10 (citing *E.E.O.C. v. JRG Fox Valley, Inc.*, 976 F. Supp. 2d 1161 (N.D. Ill. 1997), *called into question by In re Chicago Trading Group, Inc.*, 2001 WL 40071, * 4 (Bankr. N.D.

Ill. Jan. 17, 2001)). This is insufficient authority for the Court to maintain Giles and Brown as defendants in this case.

## C. Personal Participation

Lastly, Black alleges that Giles and Brown "personally participated" in the alleged phone calls and on that basis claims that they violated the TCPA. *See* R. 20 ¶¶ 19-20. Defendants argue that allowing this claim would improperly deprive them of "the protection of the corporate form," R. 32 at 5, because corporate officers "ordinarily are not subject to corporate liabilities," R. 23 at 3 (quoting *Laborer's Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009)).

Defendants' argument is correct as far as it goes. But the alleged statutory violation alleged here is not a "corporate liability." Black alleges that Giles and Brown violated a statute and injured her. The corporate form does not shield officers and employees from liability for bad acts they commit in the course of their employment. *See Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 765 (7th Cir. 2009) ("A person is not absolved of personal liability to a third person on account of his or her negligence or other wrongful act merely because at the time such person was acting as an employee within the scope of the employment."). If Plaintiffs can plausibly allege that Defendants personally violated the TCPA, Defendants' attempted reliance on the corporate form as a defense is a non-starter.

Applying this "well-settled tort rule," the majority of district courts have followed a Texas district court decision from 2001 and imposed "personal-participation liability" under the TCPA. *See Texas v. Am. Blastfax, Inc.*, 164 F. Supp.

2d 892, 898 (W.D. Tex. 2001). These courts have found corporate officers personally liable if they had "direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved." *Physicians Healthsource, Inc. v. A-S Medication Sols. LLC*, 324 F. Supp. 3d 973, 983 (N.D. Ill. 2018) (citing *Blastfax*, 164 F. Supp. 2d 892).

Defendants point out, however, that the "personal-participation standard has been criticized as resting on the challenged assumption that traditional forms of common-law personal liability remain available under federal statutes by default." *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 947 (7th Cir. 2020). Courts that question this kind of liability rely on the Supreme Court's rejection of aiding and abetting liability under the Securities Act in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 184 (1994). In *Central Bank of Denver*, the Court held that it would not impose aiding and abetting liability under the statute, "even assuming [there is] a deeply rooted background of aiding and abetting tort liability," because such liability was not expressly provided in the statute. *Id.* Following *Central Bank of Denver*, and citing a subsequent Seventh Circuit decision, the Third Circuit has surmised (in dicta) that the TCPA does not provide "personal-participation liability" because "statutory silence as to the continuing availability of common-law liability arguably means there is none." *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 161 (3d Cir. 2018) (quoting *Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (en banc)). More recently, the Seventh Circuit returned the favor

7

and cited the Third Circuit's reasoning in *City Select* (also in dicta) and questioned whether the TCPA imposes personal-participation liability. *See Arwa Chiropractic*, 961 F.3d at 947. Despite the fact that neither the Third nor Seventh Circuits actually issued holdings on this issue (and apparently no other circuit court has either), Defendants argue that the Seventh Circuit's discussion in *Arwa Chiropractic* indicates approval of the Third Circuit's suggested rejection of personal-participation liability under the TCPA, and this Court should take the hint and dismiss Plaintiffs' claims.

However, unlike the aiding and abetting liability at issue in *Central Bank of Denver*, personal-participation liability does not necessarily extend liability beyond the terms of the TCPA. The TCPA imposes liability on "persons" who "make any call" that violates the terms of the statute. *See* 47 U.S.C. § 227(b)(1)(A)(iii). On its most basic level, personal-participation liability simply acknowledges that corporate officers or employees who actually make the offending calls can be personally liable for violation of the TCPA. To the extent Plaintiffs have plausibly alleged that the two defendants actually made the alleged phone calls, liability for such conduct is well within the statutory terms and does not run afoul of the concerns identified by the Supreme Court in *Central Bank of Denver*.

But beyond this uncontroversial application of the statute, personal-participation liability also purports to impose liability on corporate officers who "authorize" the offending calls, or are the so-called "guiding spirit" to their commission by other employees. *See Arwa Chiropractic, P.C. v. Med-Care Diabetic &*

8

*Med. Supplies, Inc.*, 2019 WL 527497, at *6 (N.D. Ill. Feb. 11, 2019) (quoting *Blastfax*, 164 F. Supp. 2d at 898). While this kind of liability is more analogous to aiding and abetting liability, it still requires greater direct action because the officer is exercising their corporate and supervisory authority to cause an action to occur. An officer that "authorizes" a phone call does not merely aid and abet that phone call but rather is the "person" who actually decides that the phone call should be made. Indeed, the officer's decision that the call should be made is effectively the act of making it. Because if one employee were to refuse the order or fail to carry it out, the officer would simply find another employee willing to comply and make the call. Just because the officer does not use his own hands to make the call does not change the fact that the officer decided that the call should be made and caused it to happen.

Perhaps discovery will show that Giles and Brown were not so intimately involved in the making of the alleged phone calls in this case. But Black has alleged that they provided the call lists, scripts, and equipment necessary to make the calls and directed that the calls be made. This is sufficient to plausibly allege their liability under the TCPA.

## III. Prerecorded or Autodialed Calls

The TCPA prohibits phone calls made "using any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). Defendants argue that Black has not plausibly alleged the use of an "automatic telephone dialing system" because she does not address the facts necessary to allege that such technology was used. *See* R. 23 at 10; *see also Facebook, Inc. v. Duguid*, 141 S. Ct.

9

1163, 1167 (2021) ("To qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator."). Black does not respond to this argument, apparently conceding she has not plausibly pled the use of an automatic telephone dialing system.

But even if this allegation is insufficient, the statute also prohibits phone calls made using "an artificial or prerecorded voice." *See Marshall v. Grubhub Inc.*, 2021 WL 4401496, at *5 (N.D. Ill. Sept. 27, 2021) ("Use of an [automatic telephone dialing system] is an alternative basis for liability, not a necessary element. . . . [T]he use of a prerecorded or automated voice suffices to bring the calls within the ambit of the TCPA's robocall prohibition."). While Black alleges that she perceived the calls as being a recorded voice, Defendants argue that her other allegations undermine her alleged perception. Defendants point out that Black alleges that the caller responded substantively to Black's statements, such as stating that "the call would only take 2-3 minutes" after Black protested that she could not take the call because "she was at dinner." R. 20 ¶¶ 52-53. Defendants argue that this indicates the call was not recorded.

According to Black, however, Defendants use "soundboard technology," which permits "a live operator or . . . artificial intelligence" to select prerecorded responses "to interact with the called party during the call." R. 20 ¶ 31. Defendants do not question the plausibility of this allegation. And at the motion to dismiss stage, the Court must accept all well-pleaded facts as true. The Court is unfamiliar with

"soundboard technology," but at least two courts have granted summary judgment to plaintiffs for TCPA claims based on the defendant's use of soundboard technology, including a court in this district. *See Bakov v. Consol. World Travel, Inc.*, 2019 WL 6699188, at *4 (N.D. Ill. Dec. 9, 2019); *see also Braver v. NorthStar Alarm Servs., LLC*, 2019 WL 3208651, at *1 (W.D. Okla. July 16, 2019). That is a sufficient basis for this Court to find that Black has plausibly alleged she received phone calls from Defendants using a record voice in violation of the TCPA.

**IV.  Consent**

Lastly, Defendants argue that Black's claims should be dismissed because she consented to receive the calls and consent is a defense under the TCPA. *See* R. 23 at 12; *see also* 47 U.S.C. § 227(b)(1)(A) (exempting calls "made with the prior express consent of the called party"). Defendants' argument relies on a declaration from defendant Giles purporting to explain how he knows that Black consented to receive phone calls from First Impression. *See* R. 23 at 13-14; R. 14-1. Black, however, has presented her own evidence to argue that Defendants have fabricated documents regarding her consent. *See* R. 28 at 19 (citing R. 28-1).

Defendants argue that the Court should stay the case to permit summary judgment briefing on the issue of consent. But clearly, there is a factual dispute regarding consent. Summary judgment is not the vehicle to resolve a factual dispute. Further, the parties have not had the opportunity to take formal discovery on this or any other issue in the case. For these reasons, the court rejects Defendants' request for a stay and targeted summary judgment briefing.

**Conclusion**

Therefore, Defendants' motion to dismiss [13] [24] is denied. The parties should submit a joint status report by January 25, 2022 proposing a case management schedule and stating whether the hearing set for January 27, 2022 continues to be necessary.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: January 19, 2022