UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBIN BLACK, on behalf of herself and all others similarly situated, Plaintiff, | ) |
| vs. | ) No. 21 C 3745 |
| FIRST IMPRESSION INTERACTIVE, INC., an Illinois corporation, et al., | ) Chicago, Illinois |
| | ) June 6, 2023 |
| Defendants. | ) 4:15 o'clock p.m. |

TRANSCRIPT OF PROCEEDINGS - Motion Hearing by Video
BEFORE THE HONORABLE MAGISTRATE SHEILA M. FINNEGAN

APPEARANCES (by videoconference):

| | |
|---|---|
| For the Plaintiff: | THE WEITZ FIRM, L.L.C.<br>BY: MR. MAX S. MORGAN<br>1515 Market Street, Suite 1100<br>Philadelphia, Pennsylvania 19102<br>(267) 587-6240 |
| | ZIMMERMAN LAW OFFICES, P.C.<br>BY: MR. JEFFREY D. BLAKE<br>77 West Washington Street, Suite 1220<br>Chicago, Illinois 60602<br>(312) 440-0020 |
| For Defendants First Impression, Giles, and Brown: | MILLER, CANFIELD, PADDOCK & STONE, PLC<br>BY: MS. CARA M. HOUCK<br>225 West Washington Street, Suite 2600<br>Chicago, Illinois 60606<br>(312) 460-4239 |
| For the BoomSourcing Defendants:<br>(by phone) | CARLSON & MESSER, L.L.P.<br>BY: MR. DAVID J. KAMINSKI<br>5901 West Century Blvd., Suite 1200<br>Los Angeles, California 90045<br>(310) 242-2200 |

COLLEEN M. CONWAY, CSR, RMR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1918
Chicago, Illinois 60604
(312) 435-5594 *colleen_conway@ilnd.uscourts.gov*

(Proceedings heard by videoconference:)

THE COURT: All right. Good afternoon. Mr. White, can you please call the case?

THE CLERK: Case 21 CV 3745, Black versus First Impression; here on motion hearing.

THE COURT: All right. This is Judge Finnegan.

As you know, this hearing today is on FII defendants' motion to compel inspection of the plaintiff's computers and the taking of plaintiff's deposition. It's docketed at 93. The response is filed at docket 99 and the reply at docket 100.

I have reviewed the motion and the -- you know, all the briefs.

The motion is asking the Court to require the plaintiff to comply with defendants' request for inspection of her electronic devices, including computers; it's asking that I require her to give a deposition in Chicago; and it's asking me to order payment of defendants' legal fees in having to bring this motion.

I am going to focus first on the motion's request for plaintiff to comply with the defendants' request for inspection of her electronic devices. And I do that because the motion states that the defendants do not actually want to depose the plaintiff at this time. They want to wait until after the requested inspection of her devices has been completed, so they have the results and can question her about any information

obtained during her deposition about those devices.

And depending on when the deposition's noticed, the issue of the location may be moot by then.

So let's focus on the request for inspection of the plaintiff's devices.

By way of background, the plaintiff is alleging in this case that she received six of defendants' pre-recorded calls in February and March 2021.

During one of these, the caller stated that the call was in response to plaintiff's registration on the website YourEmployment.com, but plaintiff claims she never registered or input her information into that website.

The defendants assert that calls were made only to the individuals -- by them or their agents only to individuals who consented in writing through YourEmployment.com to receive information on educational opportunities.

They say they obtained plaintiff's telephone number "directly from plaintiff when she voluntarily filled out" the web form from YourEmployment.com and consented in writing to receiving information on educational opportunities.

Defendants have offered some supporting evidence of that. Plaintiff denies this and offers supporting evidence on her position.

Of course, this is discovery. And it's not my role, in supervising discovery, to consider and weigh the evidence

that the parties have gathered to date and decide whether plaintiff did or did not go on that website and fill out a web form, as alleged. I am not going to have a mini-trial to decide that issue. And, frankly, it appears that expert testimony and analysis might even be necessary to understand and weigh the evidence. But I do need to decide whether defendants should be allowed the discovery that they seek through an inspection of plaintiff's devices.

Here, the defendants issued their first request for inspection on February 17, 2023 and then an amended request for inspection on February 27, 2023. That amended first request for inspection is found at the docket at 93-4.

And this request for inspection asks -- or requests that the plaintiff produce items for inspection -- hold on -- under Federal Rule of Civil Procedure 34 within 30 days in accordance with the inspection protocol attached to the request as Exhibit 1. And the inspection request said the items, here certain phones and computer devices, "will be subject to third-party forensic examination performed in accordance with that protocol."

The third-party vendor was identified in the request. And I know plaintiff objected to that vendor. But the vendor has now been changed to a different one that BoomSourcing uses.

Defendants believe the inspection will show whether plaintiff did, in fact, sign up on the YourEmployment.com

website. And plaintiff opposes the inspection, saying there is no routine right of direct access to a party's ESI system; that it's unnecessary given the evidence that's available from other sources. They also argue the inspection is way too broad and protocol is unacceptable.

So I have some preliminary questions for the parties. And let me just, for a minute, move my camera, because I --

(Pause.)

THE COURT: Okay. I have two computers in front of me, and so it gets confusing.

The first question is for the plaintiff. And I want to focus solely on devices that Ms. Black used during the year 2020 and 2021. And by any devices, I mean any smartphones, laptops, tablets, or other computers that she had.

Have plaintiffs identified those devices?

MR. MORGAN: Yes, Your Honor. Max Morgan on behalf of Ms. Black.

THE COURT: Hold on, counsel. One second, because I am not hearing you, and I want to just find out if I can -- I can hear you through the courtroom, but I want to make sure I can hear you on my computer. Let me move my camera for a minute.

(Pause.)

THE COURT: Okay. Counsel, go ahead and answer. I think I'll be able to hear you now.

MR. MORGAN: Yes, Your Honor.

The plaintiff has a laptop that she's used continuously and then either one or two cell phone devices.

I believe the one cell phone was traded in. I'm not sure the exact time that that happened. I think it was well before, obviously, this case began.

But I believe that the devices that would be at all relevant would be, you know, a cellular telephone and a computer device. However, I will note that the inspection request is very broad and seeks anything in the, you know, computer hard drive, which --

THE COURT: Right.

MR. MORGAN: -- that could be any (inaudible) --

THE COURT: Yeah, we can talk about the scope.

But from your perspective, you have identified some devices that she has now, correct?

MR. MORGAN: Yes, Your Honor.

THE COURT: And those were, at least some of them, in use during the relevant time period of 2020 and 2021?

MR. MORGAN: Certainly, her laptop computer.

THE COURT: And then to the extent she has a phone -- I know when I changed phones, they transferred the data. And it's saved on the cloud anyway. But they transferred the data to my new phone. So even though I may not have used a phone during a certain year, the phone may actually have data that

was, you know, from the phone in a prior time period.

Do you know whether that's the case here?

MR. MORGAN: I do not know. I do -- I believe it's an Apple device, but I'm not positive.

And I know with Apple, they'll have various levels of, you know, cloud storage and things. I do not know the specifics, you know, that she has with her relationship with her phone provider.

THE COURT: Has data on the devices been preserved?

MR. MORGAN: I instructed Ms. Black do not make any changes to any of her electronic devices. Do not get rid of any of the electronic devices. Beyond that, we haven't consulted with a third-party expert or anything like that.

THE COURT: And has plaintiff received any discovery requests asking for her to identify the devices used in '20 and '21, or devices used after that, if she transferred data to them from the prior period?

MR. MORGAN: I do not recall any specific discovery requests that ask for identification of devices.

THE COURT: Were any discovery requests sent to plaintiff that required or led plaintiff to run searches of her devices to look for responsive ESI?

For example, did plaintiff receive any discovery requests asking for ESI containing the term "YourEmployment.com"?

MR. MORGAN: Yes. I believe certain communications.

And what the plaintiff did was, I believe, search her e-mails for those terms and was not able to locate any.

And I even believe that plaintiff provided a screenshot showing that no search resulted.

THE COURT: So you're saying plaintiff did her own searches?

MR. MORGAN: That is correct.

THE COURT: And what were you actually requested to provide? What was the request?

MR. MORGAN: I will have to look at my computer. If Your Honor will give me a few minutes?

THE COURT: And if defense counsel knows the answer to the question, since it was your request, feel free to --

MS. HOUCK: Yeah. We've --

THE COURT: -- provide that --

MS. HOUCK: It's been a while --

THE COURT: -- information. Okay.

MS. HOUCK: Sorry. It's been a while since we've sent the discovery requests. As you know, it was February. We're already in June.

And I have had, as you know, numerous conversations with counsel with regard to what my client is discovering.

THE COURT: Let's hold off, Ms. Houck. I don't want to get off-track. I'm on a very focused inquiry here. So let

me give plaintiff's counsel a chance to look for that.

And my related search is, were there requests asking for ESI reflecting the e-mail addresses for accounts that plaintiff has said she never used? You know, that led to searches being done of her devices?

MS. HOUCK: I don't know if you're --

THE COURT: That's for plaintiff's counsel.

MS. HOUCK: -- asking the question -- oh, I'm --

THE COURT: I'm asking plaintiff's counsel.

MR. MORGAN: I'm just reading through the discovery requests.

(Pause.)

THE COURT: Well, let me do this. I am not going to take the time. But I am going to want to see what the request was, what the answer was, and I am going to want to know what was actually done to -- for her to examine her own devices to see if she has this information.

And I think, as everybody's in agreement on, and I think the motion says, the defendants' inspection is designed to learn two things, whether the plaintiff used certain e-mail addresses listed in the request and whether she accessed YourEmployment.com on the dates and times in question.

I don't know what inspection of the computer needs to be done to learn the answer to those questions, but I am interested to know if plaintiff has done an inspection to

answer those questions.

And, you know, because one thing I can do is have plaintiff have a vendor run that inspection and have you, as counsel, get the results and, subject to any privilege issues, produce the answers to those questions.

But I don't think it's really satisfactory for plaintiff to conduct her own search. I don't know if she'd even have the technical expertise to really conduct an inspection.

It seems to me that this inspection could be done by a vendor pretty easily, given how narrow the time period is and the number of terms that we have.

I don't actually know what has to be done to figure out if someone accessed a website, you know, how that's done. I suppose a vendor would know.

But it seems to me that a vendor could do it. And unless it's -- you know, and it can be tailored so that it protects privacy and all the rest of it.

This is discovery. And I don't think, you know, plaintiff is -- or defendants have to accept plaintiff's declaration and where they're foreclosed from conducting discovery that's proportional and certainly seeking relevant information to a claim or defense.

So let me ask plaintiff's counsel. Given that Ms. Black, you know, apparently ran her own searches and perhaps

didn't do everything that could be done, what is your view on whether she would be willing to have a vendor do the inspection and then have you look at the results and produce responsive information?

MR. MORGAN: I would appreciate the time to discuss that, you know, with the client.

I think if it would be limited in scope to a couple of the specific issues in the case -- you know, namely, the defendants allege that she went to the website on three specific dates. So I think any inspection request should be limited to three specific dates, not three-and-a-half years of information. With --

THE COURT: You know, we certainly -- and I'm probably not going to rule right now. I definitely will not rule right now on all the -- the protocol, for example. But I think it can be done in a way that I would find to be proportional. So we can work that out.

So I am not going to have you commit, but subject to knowing exactly what the extent of the search would be, and what it would cost, and how long it would take to do, it's something you would -- it sounds like would encourage your client to agree to.

Because I think if you don't, it might be that then defendant has a stronger argument of having me have the defendant be allowed to do their own inspection. Of course,

we'd still have to agree on a protocol and get into how it is done.

MR. MORGAN: Yes, Your Honor.

Your Honor, just to go back to your earlier question about the discovery request. There was an interrogatory that asked -- or, I'm sorry, it may have been an RFP that said documents regarding the website YourEmployment.com. And I asked our client to search her e-mail addresses for any reference to the website YourEmployment.com.

The defendants have also admitted in this case that they never sent any e-mails to any of the e-mail addresses that they purport to have for the plaintiff. I think what they did was ran some kind of an investigative people-search report and got all potential e-mails associated with the name "Robin Black."

And that's why the plaintiff has been very forthcoming with telling them, "Yes, I have used this e-mail at some point in time." "Yes" -- you know, we've identified e-mail addresses --

THE COURT: You know, I think in the end -- and, again, I think you're talking about scope and getting into the minutia of what would the search involve.

If it's easily done to run -- it could take seconds, perhaps, to run five e-mails. And if you're right, they're never going to show up during the time period, right?

So, you know, I don't want to -- I am not ruling now. But I don't think it's that productive to hear these arguments, because a big component of my ruling is going to be how burdensome is it to run the terms that defendants want to run. And that may depend on how many hits you get, right?

So it's going to be burden and relevance, right? What is the probative value? And I certainly -- in assessing probative value, I am not going to assume that everything your client says in her declaration is true, right?

I mean, so if the discovery is easily done and not burdensome and can be done fast, I think it will be found to be proportional.

So I understand you're going to be making some arguments to narrow the scope of the search. I'll want to know, at the time I decide scope issues, what is the burden. How much time is saved, how much money is saved by cutting out certain, you know, search terms, for example.

MR. MORGAN: Certainly, Your Honor.

The one thing I will add with respect to the e-mail address issue is I think both parties can work together and send subpoenas to the hosts of these e-mail addresses.

I've done this in the past in other cases where you want to know, you know, when an e-mail address was created, when was it active. And oftentimes they'll have subscriber information. So the person that creates an e-mail address

through Google --

THE COURT: I think that's a great idea. I think the parties should do that. It doesn't necessarily mean you don't need or defendants are not going to be entitled to have an inspection be done. That may get some information and not other information. I don't know if that would, for example, tell you if the website was accessed.

But I am happy to have the parties talk about that. I think it's a great idea. It might go faster if plaintiff gives, you know, an authorization for release of that information. Or if she herself seeks it because it's her -- arguably, some of them are her accounts. If it's not her account, then her authorization will be meaningless.

But, certainly -- Ms. Houck, is there any reason why you -- maybe you've already done it. Have you issued a subpoena to the subscriber?

MS. HOUCK: No, no. I plan on issuing subpoenas to Yahoo! and Google.

But I have also discussed this issue with my partners, and I'm told that Google is very -- not very cooperative in this type of situation and that it would be an uphill battle for me. And --

THE COURT: Well, you either issue them or not. You don't need to explain it to me.

But you just said you are going to issue them. If

you are issuing them, get it out now and don't wait. I think that this litigation's been going on for -- you know, the lawsuit was filed in July 2021.

So I don't need to hear why you're not going to do something. But if you're going to do it, you need to get it done.

So I want to talk about next steps before --

MR. MORGAN: Your Honor?

THE COURT: Go ahead, counsel.

MR. MORGAN: I would just add, with respect to the e-mails and subpoenaing the hosts, the Storage Communications Act prevents them from providing, like, the content of e-mails, but they will provide subscriber information, ip address information, when things were created, when all the access of the e-mails were.

They will give that type of information. They're resistant to actual files.

THE COURT: All right. Great.

MS. HOUCK: I don't think that's going to help us with regard to what e-mails she --

THE COURT: Let me say this. Ms. Houck, if you don't want to issue it, don't issue it. If you are going to issue it, get those subpoenas out in the next 14 days. Because discovery's going to close. And I don't want -- you are not going to come back later, after an inspection, if one is done,

and say, "I need to issue subpoenas now."

So I am not forcing you to issue any discovery you don't want to issue, but if you do decide to issue subpoenas, you need to do it within 14 days. I think that's easily done.

MS. HOUCK: Understood.

THE COURT: In terms of the next steps. I think what I should do is have -- we have another video call scheduled about other -- the other motion that's pending, where the parties are going to be filing a joint status report soon. That's set at 11:30 a.m. on June 15.

What I'd like to have happen before then is, plaintiff's counsel, you talk to your client. And I think you need to talk to a vendor.

And, Ms. Houck, have you talked to your vendor? I know you're now working with the BoomSourcing vendor.

MS. HOUCK: I have talked to the vendor. And plaintiff's counsel objected to that, to that vendor, based on some things they found in the Better Business Bureau. I said fine.

I am not married to any particular vendor. I don't have any biases, any prejudice to any particular vendor. I just want the search to be done.

I have done this before, Judge, and it's an --

THE COURT: Well, I asked you a question that you didn't actually answer.

MS. HOUCK: Yeah. BoomSourcing, yes.

THE COURT: The BoomSourcing vendor, you have talked to them?

MS. HOUCK: Yes.

THE COURT: Okay. And in terms of the protocol, do you know what they need to do in order to see if the plaintiff has accessed a particular website back, you know, a couple years ago?

MS. HOUCK: I'm told it's non-evasive. I am told that they just plug in a device to the computer.

I personally have been on these particular inspections myself. They don't take very long at all. The plaintiff can be standing there the whole time. It doesn't take long.

And it's -- this -- frankly, Judge, this will answer the question of this entire case. I mean, my client has been forced to do more discovery than I've ever had to do, ten thousand -- thousands of documents, thousands of dollars, when we can get this question answered, whether she consented, in an hour.

Why -- you know, my client is jumping through hoops; but when it comes to my trying to request a simple inspection or a deposition, I can't get anything.

THE COURT: Well, here.

MS. HOUCK: We've given everything.

THE COURT: As you can see, I am inclined to do an inspection.

MS. HOUCK: Yeah.

THE COURT: But we do need to talk about the -- how it's going to be done.

MS. HOUCK: Yeah.

THE COURT: And, you know, that's not going to be the end of the case. I mean, you know, you're going to get your results. Plaintiffs are going to have the results. You're going to argue about it.

I am not the trial judge. So --

MS. HOUCK: Yes, that's right.

THE COURT: -- unless, you know, you agree to -- plaintiff agrees to dismiss her case, it's going to go forward. And they will want their other discovery. And so it's not going to be the end-all of discovery if you get that.

Of course, if plaintiff agrees that it shows she went on that website, that would be a very damaging finding. Now, maybe they would quarrel with it. I don't know.

MS. HOUCK: Well, at this point, we're toying with the idea of doing a counterclaim, because based on my --

THE COURT: All right. I don't -- counsel, I do not want to hear -- I don't want to get into unethical conduct or all the other issues. We're focused on just the inspection issue today.

So plaintiff's counsel have identified certain devices. I am not requiring them to identify devices of family members, unless she used those devices.

If she didn't use a device, it's sort of irrelevant. She might own it, but if she didn't use it -- and I don't -- does she have children in the house? She may have bought, you know, an Apple computer for a child, and they use it for school. Or are there family members that she lives with?

MR. MORGAN: I believe she -- I don't think there's any children. I believe that she lived with her father at one point in time, which her -- which may be very problematic, because I believe her father is a Federal Court of Claims judge.

And she also, I believe, had a significant other, but I don't know the specific timing of that relationship.

THE COURT: Why is it problematic that her father was a -- or is a Court of Claims judge?

MR. MORGAN: I guess depending on the, you know, scope of the inspection and not being able to use your devices for a period of time and --

THE COURT: I'm assuming that she would not have been using his device. Certainly, not a work device.

MR. MORGAN: I would tend to agree, Your Honor. But --

THE COURT: Right. So you're going to be

identifying, and maybe you did already, but what devices she has.

It may be that the vendor -- I don't know what information the vendor needs to know, whether it's your vendor or a vendor that defendant is using, about the devices, to be able to talk intelligently about what the protocol is and how long it would take. But, you know, be as specific as you can in identifying the devices, what -- you know, what software -- I don't know. I'm not a computer person. But I know with the iPhone, they have all the properties. You could probably take a screenshot of that. And then a computer.

MR. MORGAN: Your Honor, one thing. It's kind of our competing discovery dispute. But based on some of the discovery the defendants have provided, these leads that they generated actually have codes that identify the specific device --

THE COURT: Uh-huh.

MR. MORGAN: -- in their server logs.

MS. HOUCK: No.

MR. MORGAN: So we would ask that defendants produce that. Because then we can identify the exact type of device, the exact route that was used, you know, and target those types of devices.

The defendants have been resistant in producing it. But their web server logs that they provided for different

dates did show that information. And it's a very simple exercise.

THE COURT: All right. Well, I need the parties -- I don't know when you served that request. I assume if you issued discovery, you'll be getting it. But I am not limiting this, at this point, to those devices shown on those codes.

But, certainly, you're entitled to get, it sounds like, that discovery information. And I'll certainly take that up after the parties exhaust your efforts to confer and reach agreement.

MS. HOUCK: Your Honor, may I say something?

THE COURT: Yes. Go ahead.

MS. HOUCK: This is my motion. I feel like I'm not speaking at all here.

THE COURT: You seem like you're winning. Doesn't it seem that way?

MS. HOUCK: Oh, no. I'm just -- I think I came up with a solution, a win-win solution.

THE COURT: Oh. Go ahead, counsel. Go ahead.

MS. HOUCK: The Court has asked, rightly so, how that inspection would be conducted. Well, how about if I contact that company and have them put into writing exactly how this search would work and what it would show, so that the Court would have that, plaintiff's counsel would have that, and we would have that, and then they would know that there's going to

be no searching in any private e-mails or reading anything like that?

THE COURT: Of course, that has to be done. I wouldn't allow any search to be done --

MS. HOUCK: Yes. I'm offering --

THE COURT: Because it's a very specific protocol. But I think you need -- the vendor needs to know what the devices are in designing a protocol. And is there cloud backup? You know, there's questions that need to be asked.

So I think you should talk to your vendor. What --

MS. HOUCK: Sure.

THE COURT: -- information do they need to know in order to design a protocol. And, you know, plaintiff can ask the same thing of your vendor, if you are inclined to have yours do it, what do they need to know. And you're going to have to work closely with the vendors.

And obviously, before the search goes forward, if there are disputes, I will be resolving them so everybody's very clear on what the protocol is.

MS. HOUCK: Okay. Would the Court like me to --

THE COURT: First, you have to identify the devices and provide that information to your vendors. And then what do they need to know that they don't know. And then have them describe to you how easy or hard is this, how long it will take, you know, whatever it is that they're going to describe.

MS. HOUCK: Would it --

THE COURT: Go ahead.

MS. HOUCK: Would it help the Court and plaintiff's counsel if, within seven days, I filed something with the Court saying this is how this is going to work on a laptop and/or a cell phone? And even a PC, if maybe she used one of the -- a PC in the house. This is exactly how it works?

The way I have seen it done is they just literally plug something into the computer, and it -- back in the day, it was the hard drive. Now it's the iCloud.

So if I could get something in writing, so everybody knows where we're going with this, and they can, you know, rest assured that they're not -- she -- her privacy won't be invaded.

So if you'd like me to file something in addition, I'd be happy to do that. But I would like to get this done, because I have been asking since February, including the deposition. And I know in the beginning, you had mentioned that I would -- at this point in time, I'm willing to get this inspection done first before I take a dep. It wasn't always that way. But as --

THE COURT: So the protocol that you filed, Exhibit B --

MS. HOUCK: Yeah.

THE COURT: -- it would replace that, because you're

going to talk to a different vendor now. And you're going to have some additional information that's not apparently in Exhibit B.

MS. HOUCK: So, yeah, I think Exhibit B was just what the search terms -- because these are the e-mails that are being input into my client's system from Robin Black, or whoever this person is, putting her information and phone numbers in there.

And then the other thing I just wanted to -- to Mr. Morgan. We did answer the question with regard to whether we -- my client knows whether it was a cell phone or computer, and they've told me they cannot tell from those lead numbers.

THE COURT: Well, here's -- the motion's taken under advisement. Because, first, I don't know if I'm going to have plaintiff have a vendor run the search, if she's willing to bear that expense and has somebody who's, you know, acceptable and has a protocol.

It may be that plaintiff will -- plaintiff's vendor will do it. If not, then I will allow defendants' vendor to do it, subject to my approving the protocol.

So you're certainly happy to have you talk to your vendor some more, talk to plaintiff's counsel, but I am going to want an answer to that question before I rule and take this up on June 15. But if you can agree sooner, that would be great. And get me some more information on the protocol issue.

Because once it's known which vendor is going to do it, I want the parties to try and agree on a protocol.

And I want you, when you're talking about the protocol, to involve your vendors, because that would be very helpful. And that way, the protocol can be very specific. And I will only need to address any disputes that you have.

When you meet and confer, you know, make sure you comply with the local rule, Rule 37, to talk, not just send e-mails and, you know, letters to each other.

MS. HOUCK: I have to object to plaintiff being able to pick out the vendor. I don't see the fairness in that, since --

THE COURT: Well, it may be because your brief didn't include the legal standard for when I can order an inspection.

And it's the -- the law provides -- and plaintiffs cited this in their brief -- a forensic ESI exam constitutes an extraordinary remedy that is required only if the moving party can actually prove that the responding party has concealed information or lacks the expertise necessary to search and retrieve all relevant data.

So here, if they have a vendor who has the expertise to be able to do the search, and they are willing to do it, and the search is done in an acceptable manner, then I would not, I don't think, have a basis to order a forensic exam to be done by defendants.

If they're not willing to do it, then I think you have a very strong argument, and I would be ordering that the inspection could take place that defendants are seeking.

MS. HOUCK: It's my understanding that that case law is for a general case. This case is specific to a computer. This case is specific to a website. And that makes all the difference in the world.

THE COURT: I didn't see a single case cited in either your opening brief or your reply brief. And the reply brief was after plaintiff cited their case law. So if they were -- if it was inapposite, you know, not relevant, and you had case law, it would have been nice to put that in a reply brief.

So here's what we'll do. I want to have -- by the June 15, I want to be able to talk about this issue, so I want the filings to be in advance of that.

So right now, why don't we say I will first give the plaintiff time to decide if you are going to, with your client's, you know, approval, offer to have a vendor run these searches. If you are not, then obviously defendant is going to have a protocol, and we'll talk about that.

I would like you to be able to do that by the end of the week so that we can -- the parties can confer next week about the protocol, whether it's going to be done by plaintiff's vendor or the defendants' vendor.

And then I can rule on any disputes on the 15th, by having the parties file a joint status report on the 14th just giving me an update on these issues.

Let me ask plaintiff, do you have a need for clarification on any of that?

MR. MORGAN: No, Your Honor. So we are to decide if we would like a vendor, and we will certainly take it under advisement and begin reviewing appropriate vendors.

THE COURT: All right. So you'll decide by the 9th. And let defense counsel know what your position is.

And then you are to confer with defense counsel the following week so that you can file by June 14, the day before our next hearing, whether you have agreed to do it, and what the parties have come up with in terms of a protocol, and highlight any disputes that you have over the protocol.

MR. MORGAN: Okay.

THE COURT: And it may be -- this isn't your typical case where they are asking to compile in full e-mails over several years using search terms. I have had that in other cases. And that's where you really have a danger that e-mails are going to be reviewed that maybe have medical information or attorney-client-privileged information.

Here, they might not be reviewing any e-mails, right? It may be that the search can be done. They just want to know if she accessed a particular website or if she ever used

particular e-mail accounts. They're not asking at this point to read the e-mails.

So, again, it may be this can be done easily and it doesn't have to be a real complicated protocol. But parties need to talk to your vendors to figure that out.

Let me ask defense counsel, just in terms of what I have said so far, do you have any need for clarification or any questions?

MS. HOUCK: No. I don't know how my motion got flipped upside down here and the plaintiff's going to now pick a vendor, but it's -- I guess if they want to pay for it -- and I guess we could have the same objection they did and go look them up in the Better Business Bureau and complain. I don't know.

But I just want this done, because it is on direct point to this case. My client has been bleeding money on this for no reason if she actually went and signed up for this, among the other websites she signed up for.

So, I mean, this is just dragging on.

THE COURT: Fine. So here, let me turn to your other part of the motion.

The request to -- that I order the plaintiff to sit for a deposition in Chicago, that's denied without prejudice.

According to the May 16, 2023 order that I entered, it said: "At the request of the FII defendants, plaintiff's

deposition is to be deferred until after a ruling on their motion to compel inspection of plaintiff's computers and any inspection of the computers, if ordered."

So since you're not seeking to depose the plaintiff right now, I see no reason -- there may not be a dispute. It's possible that by the time you're ready and you notice her deposition, her medical treatment is done, and she has no objection to traveling to Chicago for her deposition.

So we'll cross that bridge when we get to it. But once you are ready to depose the plaintiff, send a notice with a date and location and time. Then confer with plaintiff's counsel.

If you can't agree on date, time, or location, that's when I will take up that issue. And you're not going to have to file a motion. We'll just -- you know, in a joint status report, you can each put your position. That's easily -- easy for me to consider that at that time.

Finally, the motion asks that I order fees to be paid to defendant for the -- bringing the motion, and I am denying that request. Both sides have some merit to their positions here.

And I will say, it was disappointing that the defendants' motion devoted so much space to irrelevant information and contained no discussion of the legal cases or the standard for when a court should require a party to turn

over its electronic devices to the opposing party for a forensic examination. As I said, even the reply brief didn't contain a single case trying to respond to what the case law was given in the plaintiff's brief.

But I also can -- would fault the plaintiff for, which has an entire lengthy section of the opposition brief called FII Defendants' Allegations of Consent Are Contradicted By The Evidence, as though this is a trial rather than discovery, and I am the fact-finder who weighs the evidence and decides whether plaintiff did or did not consent.

So the parties gave me a lot of information that would be very relevant at a trial. And I suppose you're going to have experts explain all that information and the screenshots and the data. But this is discovery. If it's relevant and proportional, then I would certainly have no basis to deny discovery.

Inspecting someone else's computer, the other side's computer is very different. And there is a higher standard to compel a party to turn over its devices to let the other side conduct their own examination rather than having the party that owns and possesses those devices do the searching and providing the responsive information.

All right. So that's my ruling on the motion. And my order today will have all the dates that I gave you a few minutes ago. And then we will talk again at the video hearing

on July -- sorry, on June 7th. Sorry, June 15 at 11:30 a.m.

And I said that's video. It's actually an in-courtroom hearing. And I'm in courtroom 2214. So I will see you in person on June 15 at 11:30 a.m.

Mr. White, before we end the hearing, let me find out from you, is there anything that I have forgotten to do? Or any dates or times I got wrong?

THE CLERK: I believe that June 15th hearing is at 2:00 p.m., Judge.

THE COURT: All right. Let me look at the order.

THE CLERK: Entered on March -- May 16th.

THE COURT: There is an order on May 22nd, docket 98.

THE CLERK: Oh, yes. You're correct. I'm sorry, Judge. My fault.

THE COURT: Okay. All right. And that says: The hearing on disputes, if any, that are listed in the June 14th joint status report is reset to June 15 at 11:30 a.m. in courtroom 2214. Time change only.

So that was the hearing we had set on the other motion that you are conferring on.

All right. Let me ask plaintiff's counsel, anything further you want to raise before we end the hearing?

MR. MORGAN: I don't believe so at this time, Your Honor.

THE COURT: Okay. Anything further from defense

counsel?

MS. HOUCK: No.

MR. KAMINSKI: Your Honor, this is David -- forgive me. This is David Kaminski on behalf of the BoomSourcing defendants.

Would it be okay, Your Honor, if the BoomSourcing defendants' counsel, myself, attend the June 15th conference telephonically?

THE COURT: Yes, because I don't think you're going to be arguing any issues that day. Correct?

MR. KAMINSKI: Yes, Your Honor.

THE COURT: All right. You can attend by telephone.

MR. KAMINSKI: Thank you very much, Your Honor.

Should I coordinate that with the court clerk?

THE COURT: Yes.

MR. KAMINSKI: I will do so. Thank you very much, Your Honor.

THE COURT: All right. Thank you, everyone. Have a good evening.

MR. MORGAN: Thank you, Your Honor.

MR. BLAKE: Thank you.

(Proceedings concluded.)

# C E R T I F I C A T E

I, Colleen M. Conway, do hereby certify that the foregoing is a complete, true, and accurate transcript of the Motion Hearing by Video proceedings had in the above-entitled case before the HONORABLE SHEILA M. FINNEGAN, one of the Magistrate Judges of said Court, at Chicago, Illinois, on June 6, 2023.

*/s/ Colleen M. Conway, CSR, RMR, CRR* *06/07/2023*

Official Court Reporter Date
United States District Court
Northern District of Illinois
Eastern Division